IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.M. and E.M., individually and on behalf of S.M. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : | NO.  14-6061 |

## MEMORANDUM AND ORDER

THOMAS J. RUETER                                    November 3, 2015
United States Magistrate Judge

Presently before the court are:  (1) plaintiffs' Motion for Judgment on the

Administrative Record on Counts I and II of Plaintiffs' Complaint ("Pls.' Mot. Summ. J.," Doc.

No. 16), defendant's response thereto (Doc. No. 18) and plaintiffs' reply (Doc. No. 22); (2)

Cross-Motion of Defendant The School District of Philadelphia for Summary Judgment ("Def.'s

Cross-Motion," Doc. No. 20) and plaintiffs' response thereto (Doc. No. 21); and (3) plaintiffs'

Motion for Attorney Fees and Costs ("Mot. for Fees," Doc. No. 17), defendant's response thereto

(Doc. No. 19) and plaintiff's reply (Doc. No. 23).  A telephone conference was held before the

undersigned on June 24, 2015 on the aforementioned motions.

## I.    BACKGROUND

This action arises out of plaintiffs' contention that defendant, The School District

of Philadelphia, failed to provide a free and appropriate public education ("FAPE") to plaintiff

S.M., a student who formally attended school in the school district.  On December 11, 2013,

plaintiffs filed an administrative due process complaint under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., Section 504 of the Rehabilitation Act of

1973 ("Section 504"), 29 U.S.C. § 794, et seq., and the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12131, et seq.. In a written decision dated July 22, 2014 (the "Admin. Decision"), Hearing Officer Jake McElligott, Esquire (the "Hearing Officer"), determined that defendant denied plaintiff S.M. a FAPE under the IDEA. (Pls.' Mot. Summ. J. Ex. B.) In his decision, the Hearing Officer stated that "[a]ny claim not specifically addressed in this decision and order is denied." (Admin. Decision at 18.) Plaintiffs admit that the Hearing Officer ruled against plaintiffs on their Section 504 and ADA claims. (Pls.' Mot. Summ. J. at 2.)

On October 20, 2014, plaintiffs filed the instant litigation asserting claims under the ADA (Count I), Section 504 (Count II), and the IDEA (Count III). See Complaint (Doc. No. 1). Plaintiffs do not seek compensatory damages in this litigation. Rather, plaintiffs state that they "filed their complaint under the ADA, Section 504, and the IDEA to receive their attorney's fees and costs as prevailing parties in the underlying administrative action." (Pls.' Mot. Summ. J. at 3 n.1.) As a prevailing party under the IDEA, plaintiffs are entitled to attorney fees and costs under that statute. Plaintiffs further explain that they filed under these three statutes because, while a party is not entitled to expert costs under the IDEA, courts have held that a prevailing party may recover expert costs under the ADA and Section 504. Id.

## II.   DISCUSSION

### 1.   Plaintiffs' Motion for Judgment on the Administrative Record

In their Motion for Summary Judgment, plaintiffs seek entry of judgment in their favor on Counts I and II of the Complaint based upon the administrative record so that they can recover expert costs under Section 504 and/or the ADA. Defendant contends that judgment on the administrative record is not warranted because, in order to prevail on their claim for compensatory damages under the ADA and Section 504, plaintiffs must prove intentional

discrimination, and there is no proof of such intentional discrimination.  (Def.'s Resp. at 3-12.)

In their response to defendant's cross-motion for summary judgment, plaintiffs state that they "do

not seek compensatory damages."  (Pls.' Resp. at 1.)  During the telephone conference on June

24, 2015, plaintiffs' counsel confirmed that plaintiffs do not seek compensatory damages.

Hence, no proof of intentional discrimination is required in order for plaintiffs to prevail on

Counts I and II of their complaint.  Defendant asserts no other grounds in opposition to plaintiffs'

Motion for Summary Judgment, and did not seek leave to supplement its opposition to plaintiffs'

Motion for Summary Judgment after learning that plaintiffs were not seeking compensatory

damages.  Accordingly, plaintiffs' Motion for Summary Judgment is unopposed and will be

granted as such.

Alternatively, plaintiffs' Motion for Summary Judgment also is granted on the

merits.  Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit under the governing

substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Furthermore, an

issue is "genuine" if a reasonable jury possibly could hold in the nonmovant's favor on that issue.

Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  To demonstrate

that no material facts are in dispute, the moving party must show that the non-moving party has

failed to establish one or more essential elements of his or her case.  Hugh v. Butler County.

Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986)).  In analyzing the evidence, the court will view the facts in the light most

favorable to the non-moving party and draw all inferences in that party's favor.  Prowel v. Wise

Bus. Forms, Inc., 579 F.3d 285, 286 (3d Cir. 2009).  Once the moving party has demonstrated

that there is no genuine issue of material fact, the non-moving party may present evidence in

accordance with Fed. R. Civ. P. 56(c).  "While the evidence that the non-moving party presents

may be either direct or circumstantial, and need not be as great as a preponderance, the evidence

must be more than a scintilla."  Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

A plaintiff claiming deprivation of a FAPE frequently seeks relief under the

IDEA, Section 504 and the ADA.  The Third Circuit Court of Appeals has recognized that there

are few differences between the substantive requirements of Section 504's negative prohibition

and the IDEA's affirmative duty.  Ridgewood Bd. of Educ. v  N.E. ex rel M.E., 172 F.3d 238,

253 (3d Cir. 1999).  In Centennial Sch. Dist. v. Phil L. and Lori L., 799 F.Supp. 2d 473, 481

(E.D. Pa. 2011) (Robreno, J.), the court explained the similarities between the two statutes as

follows:

> IDEA and Section 504 claims are similar.  The IDEA imposes an affirmative duty
> on states which accept certain federal funds to provide a FAPE for all disabled
> students.  20 U.S.C. §§ 1411, 1412(a).  Section 504 is a negative prohibition
> against disability discrimination in federally-funded programs.  29 U.S.C. §
> 794(a).  However, the IDEA and Section 504 differ in the scope of their coverage:
>
> > Although the two laws overlap significantly, it is well recognized that
> > Section 504 covers more students than does [the] IDEA.  Students with
> > disabilities who are eligible for services under [the] IDEA are also covered
> > by the prohibitions against discrimination on the basis of disability in
> > Section 504 and its implementing regulation at 34 C.F.R. Part 104, but
> > students covered only by Section 504 are not entitled to the rights and
> > protections enumerated by [the] IDEA and its implementing regulation at
> > 34 C.F.R. Part 300.
> >
> > Brendan K. ex rel. Lisa K. v. Easton Area Sch. Dist., No. 05-4179, 2007
> > WL 1160377, at *2 (E.D. Pa. Apr. 16, 2007) (citing Miller ex rel. Muller
> > v. Comm. on Special Educ. of East Islip Union Free Sch. Dist., 145 F.3d
> > 95, 100 n.2 (2d Cir. 1988) ("The purposes of the Rehabilitation Act are

> similar to that of the IDEA, but the Rehabilitation Act is broader in scope .
> . .. The definition of 'individual with a disability' under Section 504 of the
> Rehabilitation Act is broader in certain respects than the definition of a
> 'child with [a] disabilit[y]' under the IDEA.")).

Id. at 481 n.4.  However, the failure to provide a FAPE under the IDEA is not a per se violation

of Section 504.  Id. at 480-81 ("If a student is eligible under both the IDEA and Section 504 then

'the failure to provide a [FAPE] violates [the] IDEA and could violate Section 504.'  However,

violation of the IDEA is not a per se violation of Section 504 and the elements of a Section 504

claim must still be proven.") (quoting Ridgewood, 172 F.3d at 253 and citing Andrew M. v. Del.

County Office of Mental Health & Mental Retardation, 409 F.3d 337, 350 (3d Cir. 2007)).  See

also A.W. v. Middletown Area Sch. Dist., 2015 WL 390864, at *15 (M.D. Pa. Jan. 28, 2015)

("As the Third Circuit has explained, Section 504's 'negative prohibition' on disability

discrimination is substantially similar to the IDEA's affirmative duty.'  Ridley, 680 F.3d 280

(quoting W.B., 67 F.3d at 492-93).  . . .  Violations of the IDEA 'almost always' constitute

violations of Section 504.").  And see CG v. Pennsylvania Dep't of Educ., 734 F.3d 229, 235 (3d

Cir. 2013) ("Failure to provide a FAPE violates Part B of the IDEA and generally violates the

ADA and RA because it deprives disabled students of a benefit that non-disabled students

receive simply by attending school in the normal course – a free, appropriate public education.")

(footnotes omitted); Andrew M. v. Del. County Office of Mental Health & Mental Retardation,

490 F.3d 337, 350 (3d Cir. 2007) (same); N.P. v. East Orange Bd. of Educ., 2011 WL 463037, at

*10 (D.N.J. Feb. 3, 2011) (noting that courts have held that "when ADA and [Section 504]

claims are based on violations of the IDEA, the ADA and [Section 504] claims are derivative of

the IDEA claims).  Nevertheless, despite these many similarities and even though the same

conduct may be the basis for a claim under all three of the statutes, a violation of the IDEA is not a per se violation of Section 504 or the ADA; a plaintiff still must prove the elements of those distinct claims.  Andrew M., 490 F.3d at 349.

    To prevail on a Section 504 claim, a plaintiff must prove the following three elements:  (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; and (3) he was excluded from participating in, denied the benefits of, or subject to discrimination at the school.  Chambers v. Sch. Dist. of Philadelphia, 587 F.3d 176, 189 (3d Cir. 2009); Centennial Sch. Dist., 799 F.Supp. 2d at 481 (quoting Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999)).  With respect to the ADA, courts have held that "[Section] 504's definition of disability is identical to the ADA's definition."  Id. The standards for determining liability under Section 504 and the ADA are substantially the same.  Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 275 (3d Cir. 2014).  To establish an ADA claim, plaintiff must show that (1) he is disabled; (2) he is a qualified individual with a disability; and (3) he has suffered an adverse action because of that disability.  N.P. v. East Orange Bd. of Educ., 2011 WL 463037, at *10 (D.N.J. Feb. 3, 2011) (citing Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006)).  The focus of Section 504 and ADA claims is a determination that student was deprived of a service because he is disabled.

    In the present case, for the purposes of plaintiffs' Motion for Summary Judgment, defendant "does not contest the first two requirements [of a Section 504 claim] but denies the third requirement relating to discrimination and denial of school benefits."  (Def.'s Resp. at 2 n.2.)  Since defendant admits that plaintiffs have satisfied the first two elements of a Section 504 claim, this court need only determine whether the administrative record supports a finding that

plaintiffs also established the third element of a Section 504 claim, i.e., plaintiff was excluded from participating in, denied the benefits of, or subject to discrimination at the school.

Here, the Hearing Officer determined that plaintiff was denied a FAPE under the IDEA.  (Admin. Decision at 10.)  The Hearing Officer noted that the "parties agree that the student qualifies under the terms of the [IDEA] for specially designed instruction/ related services as a student with autism and attention deficit hyperactivity disorder ("ADHA")."  Id. at 2 (footnote omitted).  The Hearing Officer concluded that for the time period of April 3, 2013 through the end of the 2012 to 2013 school year, the individualized education plan ("IEP") established for plaintiff was "inappropriate to meet the student's needs."  (Admin. Decision at 9.) The Hearing Officer reached this conclusion explaining as follows:

> [The IEP] contains one goal, geared to attention to task and time-on-task.  But the evaluation history and the IEP itself indicate that the student has more profound behavioral needs, especially involving social interaction with adults and peers, and processing changes in routine.  None of these are addressed in the November 2012 IEP with [speech and language], [occupational therapy], or autism support programming.  Accordingly, the student was denied FAPE for the period from April 3, 2013 through the end of the 2012-2013 school year.

Id. at 9-10.  This finding is sufficient to show that plaintiffs established the third and final element of a Section 504 claim.  See K.K. ex rel L.K. v. Pittsburgh Pub. Sch., 590 F.App'x 148, 152 (3d Cir. 2014) (not precedential) (The "substantive law governing [Section 504 educational matters] is functionally identical to that applied in the context of a claim under IDEA, which entitles every student to a 'free appropriate public education.'").  See also Centennial Sch. Dist., 799 F.Supp. 2d at 489 ("Parents are correct in asserting that they can establish that [student] was denied a benefit to which all other students were entitled simply on the basis that [student] was disabled if they can establish a denial of a FAPE.").  The Hearing Officer's findings also are

sufficient to establish a violation under the ADA.[1]  Under collateral estoppel or issue preclusion

principles, the decision of this administrative agency "is conclusive in a subsequent action

between the parties, whether on the same or a different claim."  B&B Hardware, Inc. v. Hargis

Ind., Inc., 135 S. Ct. 1293, 1305 (2015).  The Supreme Court in B&B Hardware, Inc. further

explained that issue preclusion is "not limited to those situations in which the same issue is

before two *courts*.  Rather, where an issue is before a court and an administrative agency,

preclusion also often applies."  Id. at 1303 (emphasis in original).  See also Dici v.

Commonwealth, 91 F.3d 542, 551 (3d Cir. 1996) (determinations by state agency may have

preclusive effect in federal court); Ariel B. v. Fort Bend Indep. Sch. Dist., 428 F.Supp. 2d 640,

664-65 (S.D. Tex. 2006) (dismissing on issue preclusion grounds, ADA and RA claims based on

same allegations supporting IDEA claim); J.K. v. Springville-Griffith Inst. Central Sch. Dist. Bd.

of Educ., 2005 WL 711886, at *11 (W.D. N.Y. Mar. 28, 2005) (issue preclusion applied to

---

[1]        Defendant asserts that plaintiffs' Motion for Summary Judgment with respect to
their ADA claim should be denied because plaintiffs failed to exhaust the administrative
remedies as to that claim.  The Hearing Officer, in an email dated January 21, 2014, refused to
consider plaintiffs' ADA claim citing that his review of the relevant statute revealed "nothing . . .
which bestows jurisdiction on a Pennsylvania special education hearing officer to hear claims
made under the ADA."  (Resp. Ex. A.)  In a decision entered after the Hearing Officer's email,
the Third Circuit Court of Appeals determined that hearing officers may consider ADA and
Section 504 claims and, in fact, if the plaintiff is seeking relief that could be obtained under the
IDEA, claims under the ADA and Section 504 must be exhausted in the administrative process.
Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272-73 (3d Cir. 2014).  The
administrative process set forth by the IDEA involves the filing of a complaint and participation
in an impartial due process hearing.  See 20 U.S.C. § 1415(b)(6), (f).  In the instant matter,
plaintiffs' complaint filed in the administrative process contained claims under the IDEA, ADA
and Section 504.  Plaintiffs proceeded with an administrative hearing that lasted six days.  For
the purposes of the instant proceeding, plaintiffs' ADA claim is exhausted.  In the alternative, the
court notes that defendant's failure to exhaust argument applies only to plaintiffs' ADA claim.
As set forth herein, plaintiffs are entitled to recover experts' costs associated with their claims
under both Section 504 and the ADA.

Rehabilitation Act (Section 504) and ADA claims "as they rely on the same set of facts as the IDEA claim"). For all the reasons stated herein, plaintiff's Motion for Summary Judgment is **GRANTED**.

> **2.**    **Defendant's Cross-Motion for Summary Judgment**

In its Cross-Motion, defendant seeks summary judgment as to Counts I and II of the Complaint on the grounds that plaintiffs are not entitled to compensatory damages on these Counts because there is no allegation or proof that defendant was deliberately indifferent to the educational needs of the student. (Def.'s Mem. of Law Supp. Cross-Mot. at 1, 11.) As discussed above, in their response to Defendant's Cross-Motion, plaintiffs state that they "do not seek compensatory damages." (Pls.' Resp. at 1.) During the telephone conference on June 24, 2015, plaintiffs' counsel confirmed that plaintiffs do not seek compensatory damages. Defendant alleges no other grounds in support of the Cross-Motion. Defendant's Cross-Motion is **DENIED**.

> **3.**    **Plaintiffs' Motion for Attorney's Fees and Costs**

>> **A.**    **Attorney Fees and Costs**

Plaintiffs are entitled to attorney fees and costs under section 1415 of the IDEA, which authorizes payment of plaintiffs' reasonable attorney fees and costs as the prevailing party. Under the terms of the IDEA, "[f]ees awarded under this paragraph, shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C). A judge in this district recently addressed the manner in which fee requests in IDEA cases proceed:

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The fee petitioner must provide evidence "supporting the hours worked and rates claimed." Id. Once the fee petitioner submits evidence supporting the hours worked and rates claimed, the party opposing the fee application has the burden of challenging the reasonableness of the requested fee. McKenna v. City of Philadelphia, 852 F.3d 447, 459 (3d Cir. 2000) (citing Rode, 892 F.2d at 1183). A district court should not "decrease a fee award based on factors not raised at all by the adverse party." McKenna, 582 F.3d at 459 (quoting Bell v. United Princeton Props., Inc., 884 F.2d 713, 720 (3d Cir. 1989)).

The calculation of the appropriate amount of attorney's fees begins with the lodestar, which is the product of "the appropriate billing rate for the party's attorneys" multiplied by "the number of hours those attorneys reasonably expended on the action." See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005). The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 726 F.3d 403, 413 (3d Cir. 2013). To determine the prevailing market rate, "the court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Interfaith Cmty. Org., 426 F.3d at 708 (quoting Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001)).

. . .

In addition to determining the reasonable hourly rate, the court must examine the hours requested and exclude those which were not reasonably expended. Interfaith Cmty. Org., 726 F.3d at 416 (quoting Interfaith Cmty. Org., 426 F.3d at 711). Hours are not reasonably expended if they "are excessive, redundant, or otherwise unnecessary." A district court must reduce the hours requested by the number of hours spent litigating distinct, unsuccessful claims. Dee v. Borough of Dunmore, 548 F.App'x 58, 64 (3d Cir. 2013) (citing Hensley v. Eckerhart, 461 U.S. 424, 434-35 . . . (1983)). A district court may also deduct hours that are inadequately documented. See Dee, 548 F.App'x at 64. Finally, once the lodestar has been calculated, a court may adjust the lodestar downward if the prevailing party is only partially successful. Id.

E.C. and C.O. v. Sch. Dist. of Philadelphia, 91 F.Supp. 3d 598, 603-04 (E.D. Pa. 2015) (Tucker, Ch. J.), appeal filed, No. 15-1825 (3d Cir. Apr. 6, 2015).

10

**B.**      **Reasonable Hourly Rates**

Plaintiffs seek attorney fees for the following attorneys, who all are employed by the Law Offices of David J. Berney, P.C. (the "Berney Law Offices"), and at the following hourly rates:

> David J. Berney, Esquire (J.D. 1992) - $395
> Vanita Kalra, Esquire (J.D. 2006) - $300
> Jennifer Sang, Esquire (J.D. 2008) - $265
> Kevin Golembiewski, Esquire (J.D. 2013) - $200

At the time the Motion for Fees was filed, these were the customary hourly billing rates charged by the Berney Law Offices for "fee-paying clients in special education matters."  (Mot. for Fees at 4.)  Generally, to determine the reasonableness of an attorney's hourly rate for the purposes of awarding fees, courts begin by looking to the attorney's customary billing rate for fee-paying clients at the time the fee petition was filed.  See Student Pub. Interest Research Grp. of N.J., Inc. v. AT&T Bell Labs., 842 F.2d 1436, 1445 (3d Cir. 1988) ("The reasonable value of an attorney's time is the price that time normally commands in the marketplace, which is generally reflected in the attorney's normal billing rate.") (quotations omitted); G.J. ex rel Jackson v. Lower Merion Sch. Dist., 2012 WL 2327780, at *4 (E.D. Pa. June 19, 2012) ("The best evidence of the reasonable rate for an attorney's time is the customary billing rate for clients.").  See also Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001) (same).

Defendant contends that the reasonable hourly billing rates for counsel should be the rates contained in counsels' original engagement letter with plaintiffs dated December 10, 2013.  The stated hourly rates for counsel in the original engagement letter were:  Mr. Berney – $350, Ms. Kalra – $265, Ms. Sang – $225 and Mr. Golembiewski – $180.  Counsels' rates were

11

increased pursuant to a new engagement letter dated January 30, 2015, which postdates the filing

of this civil action.  (Def.'s Resp. at 9.)  In their Motion for Fees, plaintiffs argue that "the Third

Circuit has instructed Courts [in the first instance] to look to the applicant attorney's customary

billing rate for fee-paying clients at the time the fee petition was filed."  (Mot. for Fees at 4

(quoting Ellis v. Ethicon, Inc., 2010 WL 715403, at *3 (D.N.J. Mar. 1, 2010)).  Key to this

statement is the phrase "at the time the fee petition was filed."  The Motion for Fees was filed on

May 4, 2015.

       As this court stated in an earlier decision cited by plaintiffs, counsels' hourly rates

are not limited by rates specified in engagement letters; a fee agreement does not impose an

automatic ceiling on an award of attorney fees.   See Steward v. Sears, Roebuck & Co., 2008 WL

189995, at *3 (E.D. Pa. Apr. 29, 2008).  However, the fees stated therein are evidence of the

prevailing rates at that time to be considered by the court.  Id.  In Steward, this court refused to

charge a 2008 hourly rate for services performed in the years 2001 through 2006, and noted that

the only difference in the rates was the passage of time.  The court further noted that the passage

of time could be remedied by the payment of interest, which the parties in that case had

requested.  Plaintiffs' counsel herein do not request the payment of interest.  In Steward, two and

one-half years had passed between the engagement letters setting forth counsel's hourly rate.  In

this case, just over one year has passed, December 2013 to January 2015.

       As an alternative, plaintiffs' counsel suggests that the court could start with the

hourly rates stated in the original engagement letter from December 2013.  According to that

agreement, counsel were permitted to increase their billing rates "at the beginning of each new

calendar year by an amount equal to no greater than 5% of the hourly rate in effect during the

preceding year."  (Pls.' Reply at 3 n.3.)  Plaintiffs calculate that a 5% increase in the hourly rates

on January 1, 2014 and another 5% increase on January 1, 2015, would yield the following

hourly rates for plaintiffs' counsel:  Mr. Berney – $385, Ms. Kalra – $292 and Ms. Sang – $248.

The court finds that these rates establish a reasonable baseline for determining the hourly rates to

be applied in this case.  The exception to this determination is that defendant specifically does

not object to the claimed hourly rate of $200 for Mr. Golembiewski.  (Def.'s Resp. at 10 n.2.)

See E.C., 91 F.Supp. 3d at 603 (court may not reduce fee award based upon factors not raised by

the opposing party).  See also Jackson v. Philadelphia Housing Auth., 858 F. Supp. 464, 469

(E.D. Pa. 1994) (party opposing fee petition must make specific objections thereto).

       The parties suggest that the Community Legal Services ("CLS") fee schedule

("CLS Fee Schedule") is a useful tool in determining the reasonableness of hourly rates for

attorneys.  Defendant asserts that the 2011 CLS Fee Schedule is appropriate to use in this case

(Def.'s Resp. at 7), while plaintiffs contend that the more recent 2014 CLS Fee Schedule is more

appropriate (Pls.' Reply at 1-2).  Courts in the Third Circuit have both accepted and rejected use

of the CLS Fee Schedule in this context for various reasons.

       Courts in this circuit have used the CLS fee schedule as a guide when
determining an appropriate hourly rate.  See, e.g. Pelzer v. City of Philadelphia,
771 F.Supp. 2d 465, 470 (E.D. Pa. 2011).  "[T]he Third Circuit has accepted the
CLS fee schedule in some circumstances, such as where the attorney seeking
recoupment of fees was associated with CLS, or where limited evidence was
submitted by the parties."  Mitchell [v. City of Philadelphia,] 2010 WL 1370863,
at *15 [(E.D. Pa. Apr. 5, 2010)] (citing Mary Courtney T. v. Sch. Dist. of
Philadelphia, No. 06-2278, 2009 WL 185426, at *3 (E.D. Pa. Jan. 22, 2009)).

       Courts have also rejected using the CLS fee schedule for various reasons.
. . .  For instance, in Mitchell, this Court declined to use the CLS fee schedule for
the following reasons:  (1) it did not reflect the prevailing rate at the time of the
petition; (2) the attorneys were unaffiliated with CLS; (3) the parties had

submitted sufficient evidence of the prevailing market rates; and (4) "the CLS schedule [did] not take into account any specialized skills or experience the attorneys bring to their practice," which is contrary to governing precedent. Id., see also Davis v. Riddle & Assocs., P.C., 579 F.Supp. 2d 692, 694 (E.D. Pa. 2008) ("The CLS schedule, while a useful starting point, is not the exclusive tool to determine appropriate fees in the presence of other evidence.").

E.C., 91 F.Supp. 3d at 606.

In the instant case, plaintiffs' counsel have submitted sufficient affidavit evidence of the prevailing market rates for attorneys practicing in their area of legal expertise. This court will consider the 2014 CLS Fee Schedule in its process of determining a reasonable hourly rate for counsel[2], but the 2014 CLS Fee Schedule will not be the exclusive tool relied upon by the court.

Plaintiffs' counsel submitted numerous affidavits attesting that the hourly rates charged by the attorneys at the Berney Law Offices are well within the prevailing market rates in Philadelphia. See Mot. for Fees Exs. B, C, D, E, F, G, H, I, J, K, and L. The reasonableness of the hourly rates is confirmed by consultation with the 2014 CLS Fee Schedule. Mr. Berney is an attorney with twenty-three years experience. According to the 2014 CLS Fee Schedule, the range of hourly rates for an attorney with twenty-one to twenty-five years experience is $520 to $590. Mr. Berney's hourly rate of $385 is reasonable. Ms. Kalra has nine years experience. According to the 2014 CLS Fee Schedule, the range of hourly rates for an attorney with six to ten years experience is $265 to $335. Ms. Kalra's hourly rate of $292 is reasonable. Ms. Sang has seven years experience. According to the 2014 CLS Fee Schedule, the range of hourly rates for an

---

[2]     The court will use the 2014 CLS Fee Schedule, not the outdated 2011 CLS Fee Schedule which predates all services performed herein. See E.C., 91 F.Supp. 3d at 606 (rejecting use of the 2011 CLS fee schedule because it predated the fee petition by nearly three years).

attorney with six to ten years experience is $265 to $335.  Ms. Sang's hourly rate of $248 is reasonable.  As noted above, defendant specifically does not object to the claimed hourly rate of $200 for Mr. Golembiewski.  The hourly rates to be applied to the services requested herein are: Mr. Berney – $385, Ms. Kalra – $292, Ms. Sang – $248, and Mr. Golembiewski – $200.[3]

> ### C.    Hours Expended

Plaintiffs submitted sufficient evidence in the form of time sheet compilations to support the number of hours for which compensation is requested.  In the Motion for Fees, counsel request payment for the following number of hours:  Mr. Berney – 71.7 hours (Mot. for Fees Ex. A); Ms. Kalra – 19.1 hours, id. Ex. M; Ms. Sang – 320.7 hours, id. Ex. N; and Mr. Golembiewski – 16.4 hours, id. Ex. O.  Defendant objects to many of the hours listed on the grounds that they are duplicative, excessive, vague or otherwise objectionable.

> #### i.    Duplicative Hours and Excessive Time for the Due Process Hearing

Defendant combines these two categories of objections (Def.'s Resp. at 12). There is no dispute that the due process hearing consisted of "six all-day sessions" on March 28, April 25, May 7, May 21, May 22 and June 9, 2014.  Id.  There also is no dispute that Mr. Berney did not attend these hearings; Ms. Sang was present at the hearings.  Id.  Mr. Berney, the senior and more highly compensated attorney, consulted with Ms. Sang, the less experienced and less

---

[3]    This court notes that the reasonable hourly rates recently approved by a court in this district for Ms. Kalra and Ms. Sang were $245 and $225, respectively.  See E.C., 91 F.Supp. 3d at 606 (noting that Ms. Kalra did not focus her practice on special education law until 2013 and, approving Ms. Sang's requested hourly rate of $225 noting that she devoted 90% of her practice since March 2011 to special education cases).  Here, the court finds that plaintiffs' counsels' suggested compromise hourly rates for Ms. Kalra of $292 and Ms. Sang of $248 are reasonable based upon the numerous affidavits submitted by counsel in support of the requested fees and the specialized skill and knowledge required by the area of law, all as confirmed by comparison with the general hourly rates as specified in the 2014 CLS Fee Schedule.

15

costly attorney, as she prepared for the due process hearing.  Examples of these types of communications are:

| | | |
|---|---|---|
| 5/13/13 | Attorney-case consultation with Jennifer Sang, Esquire re strategy for private tuition reimbursement case | .10 |
| | . . . | |
| 9/12/13 | Reviewing and responding to emails from Jennifer Sang, Esquire et al. re transportation to Student's private placement | .10 |
| | . . . | |
| 5/20/14 | Strategy meeting with Jennifer Sang, Esquire re scope of testimony of expert Eric Mitchell, Ph.D and meeting with Eric Mitchell, Ph.D | .40 |

These types of communications between senior and junior attorneys are appropriate and contribute to the overall reduction of costs of litigation with the junior attorney performing most of the work.  Mr. Berney points out that he spent approximately five hours on activities related to hearing preparation which this court finds to be reasonable.  (Pls.' Reply at 7.)

Defendant asserts that courts in this district have recognized that the preparation time for a hearing should be considered relative to the length of the hearing.  (Def.'s Resp. at 12.) See Elizabeth S. v. Sch. Dist. of Philadelphia, 2012 WL 2469547, at *3 (E.D. Pa. June 28, 2012) (applying a 2:1 ratio of time spent preparing for a hearing and the length of the hearing). However, the court in Elizabeth S. addressed time specifically spent preparing for the due process hearing, not all the time spent up until the hearing.  Additionally, the 2:1 ratio of preparation time to hearing length applies more strictly to a senior attorney and not to a less experienced attorney.  See E.C., 91 F.Supp. 3d at 608-09 (court found preparation time by Ms.

Sang reasonable given the tasks performed, the passage of time between each hearing date, and Ms. Sang's less experienced status).

In this case, Ms. Sang spent approximately 119 hours in preparation for the due process hearing, which lasted six days and for which Ms. Sang billed 31.1 hours. (Pls.' Reply at 6-7.)[4] Two and one-half months elapsed between the first and last of six hearing dates. Multiple issues and multiple witnesses were presented. This court rejects defendant's objections to the time spent preparing for the due process hearing.

### ii. Vague Time Entries

Defendant correctly points out that many of the time entries for Ms. Sang are vague. As noted above, the court may deduct hours that are inadequately documented. Without adequate documentation or explanation, this court cannot determine whether the hours requested are reasonable or even necessary. In its response, defendant identifies 30.4 hours of time entries by Ms. Sang that it claims to be vague and which should be deducted from Ms. Sang's fee award. See Def.'s Resp. at 14-18. Plaintiffs identify case law in which similarly identified time entries have been found sufficient. See E.C., 91 F.Supp. 3d at 610, Elizabeth S., 2012 WL 2469547, at *2. These courts found time entries identified as follows to be sufficient for the purposes of a motion for fees: "t/c with client," "letter to client," "meeting with client," or "email to expert." E.C., 91 F.Supp. 3d at 610, Elizabeth S., 2012 WL 2469547, at *2. As one court explained,

---

[4]      This is contrary to defendant's assertion that Ms. Sang billed 306.2 hours preparing for the due process hearing. Plaintiffs explain the activities included in, and not included in, their calculation of preparation time. (Pls.' Reply at 6-7.) For the most part, this court finds that plaintiffs' identification of certain tasks as being hearing preparation and other tasks as not being hearing preparation to be reasonable. The court disagrees with defendant that Ms. Sang performed all 306.2 hours of work in preparation for the due process hearing.

"Courts have repeatedly found time entries sufficiently specific where such entries merely indicate some sort of communication with a client without any exposition of the subject matter of the communication."  E.C., 91 F.Supp. 3d at 610 (citations omitted).

This court agrees that where the fee petition as a whole is "sufficiently specific to permit a determination of whether the hours spent were reasonable," no deduction for a reasonable number of vague entries will be made.  Elizabeth S., 2012 WL 2469547, at *3. However, time entries without a minimum of identifying information should be the exception, not the rule.  Here, defendant has identified 30.4 hours of allegedly "vague" entries.  (Def.'s Resp. at 14-18.)  In one month, December of 2013, Ms. Sang listed more than twenty such entries.  Additionally, not all of the entries objected to by defendant indicate "some sort of communication with a client without any exposition of the subject matter of the communication." E.C., 91 F.Supp. 3d at 610.  For example, defendant identifies 2.8 hours of "legal research" performed by Ms. Sang without further explanation.  Ms. Sang also posted many time entries of .3 hours or more for undetailed communications with the client.  For these larger and more expensive time entries, greater detail should be provided.  This court has reviewed every one of the time entries identified by defendant as vague, and agrees that some are sufficiently vague such that this court cannot discern whether the time spent was reasonable, necessary and/or performed by the appropriate level of professional.  As such, the court will deduct ten hours of time from Ms. Sang's fee request.

### D.    Partial Success

A lodestar may be reduced based upon the degree of success of the prevailing party.  See Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031 (3d Cir.

1996) (fees discounted by 50% for partial success).  Here, defendant contends that plaintiffs' fee award should be reduced by at least thirty (30%) percent based upon plaintiffs' prevailing on only two out of three requests for relief.  (Def.'s Resp. at 23-24.)  Defendant asserts that plaintiffs raised three main issues in the administrative proceeding:  (1) whether defendant violated IDEA by failing to offer a FAPE from April 3, 2013 through the end of the 2012-2013 school year; (2) whether the proposed IEP for the 2013-2014 school year was appropriate; and (3) whether the student was entitled to compensatory education for deprivation of gifted education in both school years.  (Admin. Decision at 3-4.)  Since plaintiffs did not prevail on the third of these three issues, defendant requests a thirty percent reduction in the fee award.

The evidence in the record does not support the contention that each of the three issues is separate and received one-third of the focus of the case.  In support of this reduction, defendant points to several pieces of evidence including two pages of testimony by the student's father about the gifted services.  (Def.'s Resp. at 23-24.)  Plaintiffs counter that a review of the transcripts shows that the word "gifted" appears on approximately fifty pages out of 1,000 pages of testimony, or roughly five percent, and that of 650 pages of exhibits, less than thirty pages contain the word "gifted," or roughly four percent.  (Pls.' Reply at 14-15.)  While a word count is at best a poor measure of the significance of an issue, in this case, it does provide some indication that the "gifted" issue was not overly significant in the proceedings as a whole.

Additionally, as explained by Ms. Sang, the student's "private placement addressed both [his] special education needs and his giftedness, his special education/private reimbursement case was necessarily intertwined with any gifted issues raised."  (Pls.' Reply at 13-14 and Ex. D.)  Ms. Sang further explained that

19

> because Student struggles with Attention Deficit Hyperactivity Disorder, his programming must leverage his strengths to keep him engaged and on task when his teachers are engaging his areas of weakness.  Additionally, the enrichment aspect of Student's education may be used as a reward system for Student when he progresses in an area of deficit.  Because Student's private placement provides the type of enrichment program that serves these functions, Student's gifted issues were inherently intertwined and inseparable from Student's special education and tuition reimbursement claims.

(Pls.' Reply at 14.)  Where issues are intertwined or related, there should be no reduction in attorney fees because some related claims were unsuccessful.  See West Virginia Univ. Hosp., Inc. v. Casey, 898 F.2d 357, 361 (3d Cir. 1990).  Here, the issues clearly were intertwined and related and cannot be separated.

Lastly, Ms. Sang explained that the gifted issue comprised a very small part of the underlying administrative action; she represented plaintiffs in a previous administrative special education case at which the gifted programming was at issue.  By the time the instant administrative action was commenced, the student already was enrolled in a private school and, at the Hearing, no new facts were presented related to the gifted issue and there were no "additional gifted records generated by the School District to review."  (Pls.' Reply at 15.)  Ms. Sang estimates that of the 300 hours she spent on this case, less than two hours were devoted to the gifted issues.  Id. and Ex. D.

For all these reasons, this court declines to make a downward adjustment to the fee award based upon partial success.  Here, plaintiffs were awarded compensatory education, a private placement, pendency and are eligible to attorney fees and litigation costs.  Although plaintiffs were unsuccessful on the gifted education aspect of their claim, the student received a private placement addressing all of his educational needs.

### E.    Excessive Time On Federal Civil Action

Defendant asserts that plaintiffs' counsel spent excessive time on preparing and litigating the instant federal action.  (Def.'s Resp. at 20-22.)  Defendant states that Mr. Berney recorded approximately 46.5 hours on or after August 5, 2014 on this federal action, while Ms. Kalra recorded 19.1 hours on or after May 5, 2014, also for this federal action.  Id. at 21. Defendant contends, for example, that gathering and appending eleven affidavits as to the reasonableness of the fees to the Motion for Fees was excessive.  Id.

In their response, plaintiffs' counsel explains that, at the time defendant filed its response to the Motion for Fees, Mr. Berney had spent approximately 41.8 hours on matters related to the federal action, Ms. Kalra had spent 19.1 hours, Ms. Sang had spent 11.7 hours, and Mr. Golembiewski had spent 8.8 hours.  Not all of this time was devoted to the Motion for Fees. Counsel outlined the following tasks performed relating to the federal action, inter alia:  Drafting complaint, plaintiffs' Motion for Fees and Motion for Summary Judgment; preparing joint case report; preparing for Rule 16 conference and settlement conference; and corresponding with court and defense counsel.  (Pls.' Reply at 10.)  Additionally, plaintiffs' counsel incurred time in responding to arguments raised by defendant in its responses to plaintiffs' motions.

This analysis requires a careful balancing because, unlike the tasks related to the administrative proceeding which were performed mostly by a less experienced and less expensive attorney, Ms. Sang, the most experienced and most expensive attorney, Mr. Berney, performed most of the work related to the federal action, the goal of which is collection of fees. This court has very carefully reviewed the time entries of all of the attorneys relating to the federal action.  Mr. Berney spent almost seven hours preparing, researching and revising the

21

Motion for Fees.  Given Mr. Berney's experience in seeking payment of fees in these types of cases, this amount of time is excessive and the court will reduce that time by 3.5 hours.

Additionally, on May 1, 2015, Mr. Berney devoted 1.6 hours to "legal research re what constitutes substantial justification to reject School District offer under 20 U.S.C. § 1415(i)(3)(E)."  (Motion for Fees Ex. A.)  This type of activity is more suited for a junior attorney than an attorney with Mr. Berney's experience and commensurate hourly rate.  The court will deduct these 1.6 hours from Mr. Berney's fee request but allow payment of these same 1.6 hours at the reduced hourly rate of Ms. Sang, $248.00.  See Jackson, 858 F. Supp. at 476 (appropriate to reduce  an attorney's hourly rate for partner's services that represented associate-level work).  The court rejects defendant's contention that eleven affidavits addressing the reasonableness of counsels' hourly rates were excessive.  Counsel seeking payment bears the burden of proving the reasonableness of the requested hourly rates.  Had counsel submitted, for example, two rather than eleven affidavits, defense counsel might have been heard to complain that counsel submitted too few affidavits.  While eleven does seem to be at the upper limit of the number of affidavits needed to support a requested hourly wage, there is no magic number of affidavits required and the party bearing the burden is well advised to err on the side of over-proving its case.

Ms. Kalra also spent significant time drafting the Motion for Fees.  Ms. Kalra's hourly rate is above that of Attorneys Sang and Golembiewski.  Ms. Kalra devoted all of her 19.1 billed hours to drafting and revising the Motion for Fees, and issues related thereto.  While there is no doubt that the quality of the work from the Berney Law Offices is outstanding, this again is a matter which a less experienced and less expensive attorney could have managed with

22

appropriate supervision.  For example, Ms. Sang litigated the substantive parts of this case to

success.  Yet, Ms. Kalra, a senior attorney, devoted all of her time in this case to obtaining

compensation for the Berney Law Offices.  Ms. Kalra's time is excessive and could have been

managed by an attorney billing at a lower hourly rate.  Five hours will be deducted from Ms.

Kalra's fee request, but those five hours will be allowed at Ms. Sang's hourly rate of $248.00.

### F.    Additional Fees Requested

In their reply filed in support of their Motion for Fees, plaintiffs' counsel request

additional compensation for time incurred since the filing of the Motion for Fees.  (Pls.' Reply at

16 and Exs. D and E.)  Counsel claim to have expended the following additional hours in this

matter:  Mr. Berney – 12.4 hours, Ms. Kalra – 17.2 hours, Ms. Sang – 1.4 hours, and Mr.

Golembiewski – 7.6 hours.  Id.  This time was spent responding and replying to the pending

motions.  Review of the time sheets submitted by counsel reveal that Mr. Berney and Ms. Kalra

spent considerable time performing legal research and revising briefs, see, e.g. Pls.' Reply Ex. E

(Mr. Berney reports 0.3 hours reviewing the Motion for Fees his own office filed, 4.4 hours

revising plaintiffs' reply brief and 4.0 hours reviewing, editing and finalizing pleadings, and Ms.

Kalra reporting 3.7 hours researching fee cases, 9.1 hours researching various issues and

"skimming administrative complaint," and 2.3 hours revising reply to Motion for Fees).  The

court finds these hours excessive and many of these tasks could have been delegated to less

experienced and less expensive attorneys in the Berney Law Offices.  Consequently, the court

will reduce Mr. Berney's requested hours by eight hours and Ms. Kalra's requested hours by five

hours.  The court will allow payment of five hours of services at Ms. Sang's hourly rate of

$248.00, to account for time spent by Mr. Berney and Ms. Kalra on tasks that could have been

23

performed by a lesser experienced attorney.  The court finds the additional hours reported by Ms. Sang and Mr. Golembiewski to be reasonable.

### G.      Settlement Offer

Defendant claims that plaintiffs are not entitled to attorney fees incurred following defendant's settlement offer of March 18, 2014, by application of § 1415(i)(3)(D), which prohibits the award of attorney fees and related costs "for services performed subsequent to the time of a written offer of settlement to a parent if:  (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative hearing, at any time more than 10 days before the proceeding begins; (II) the offer is not accepted within 10 days; and (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement."  20 U.S.C. § 1415(i)(3)(D).  Defendant asserts that the decision of the hearing officer was not more favorable than the settlement offer it made to plaintiffs.  Plaintiffs disagree.

Defendant made its first settlement offer by letter dated March 18, 2014.  (Mot. for Fees Ex. AA.)  Defendant made a second settlement offer by letter dated March 19, 2014. (Resp. Ex A.)  Defendant describes the March 19, 2014 letter as an "amended offer" to the March 18, 2014 settlement offer.  (Resp. at 18.)  However, by its very terms, the March 19, 2014 letter is a separate settlement offer.  The first line of the March 19, 2014 letter states as follows: "This letter represents the School District of Philadelphia's offer of settlement in the above-referenced matter pursuant to Fed. R. Civ. P. 68, 20 U.S.C. § 1415(i)(3)(D)(i), and 34 C.F.R. § 300.517(c)(2)(i)."  This is identical to the first line of the March 18, 2014 letter.  The March 19, 2014 letter makes no reference to the March 18, 2014 letter, does not mention the words

24

"amend" or "amendment," and contains four terms of settlement, as opposed to three settlement terms in the March 18, 2014 letter.

The relevant offer, therefore, is the March 19, 2014 letter. The March 19, 2014 letter was not made "more than ten days" before the date of the hearing, March 28, 2014. (Mot. for Fees at 20-21.) Counting the date of the letter, March 19, 2014, as day one, the settlement offer was made exactly ten days before the date of the hearing. In the case of an administrative hearing, the statute requires the offer be made "at any time more than 10 days before the proceeding begins." While defendant misses this date by one day, the language and requirements of the statute are clear. Id.

Alternatively, Section 1415(i)(3)(E), provides that the court has discretion to award fees even if it concludes that plaintiffs received less at the hearing than was offered in settlement. Section 1415(i)(3)(E), titled "Exception to prohibition on attorneys' fees and related costs," provides that "[n]otwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." In their letter dated March 25, 2014, plaintiffs detailed nine reasons for rejecting defendant's settlement offer, and proposed a counter-offer. (Mot. for Fees at Ex. AA.) This court finds that plaintiffs were "substantially justified" in rejecting defendant's settlement offer for the well stated reasons set forth in their March 25, 2014 letter. See also Mot. for Fees at 20-28 (rejected defendant's settlement offer because, inter alia, it did not provide that the private school would be a pendent placement, no sum certain was offered for attorney fees, payment of experts was not included, and limited use of compensatory education).

25

Consequently, this court denies defendant's request that plaintiffs request for fees be denied by application of 20 U.S.C. § 1415(i)(3)(D).[5]

**H.      Costs – Expert Fees and Copying and Filing Costs**

  **i.      Expert Fees**

   Plaintiffs are entitled to recover expert fees under Section 504 and/or the ADA. Plaintiffs request the following expert fees:

| | |
|---|---|
| Dr. Felicia Hurewitz, Ph.D. (Ex. T) | $4,725.00 |
| Dr. Eric Mitchell, Ph.D. (Ex. U) | $1,897.50 |
| Karen Clapper, MS CCC-SLP/L (Ex. V) | $1,791.38 |
| Roberta Tannenbaum, OTR/L (Ex. W) | $ 981.25 |

(Mot. for Fees at 19 and Exs. T, U, V and W.)  Plaintiffs submitted affidavits in support of the reasonableness of the fees and hours of these individuals.  Id. Exs. E, H, X and Y.  Additionally, Ms. Sang provides a declaration addressing the direct relationship between the expert consultations and plaintiffs' success in this case.  Id. Ex. N.  Plaintiffs assert that the educational evaluations and services of these four experts "were necessary to assist the hearing officer in understanding the extent of the student's disability, educational needs, appropriateness of the private school, and the inappropriateness of the program offered by defendants."  Id. at 18-19. See, e.g. Munir v. Pottsville Area Sch. Dist., 723 F.3d 423, 426 (3d Cir. 2013) (for tuition

---

[5]  In James S. v. Sch. Dist. of Philadelphia, 559 F.Supp. 2d 600 (E.D. Pa. 2008), the court declined to consider whether the exception in 20 U.S.C. § 1415(i)(3)(E) applied where a genuine issue of fact existed as to whether the prohibition in Section 1415(i)(3)(D) applied.  Id. at 631.  That case is distinguishable from the instant matter.  In James S., the court denied the plaintiff's motion for summary judgment on the issue of liability for attorneys' fees under the IDEA.

reimbursement, plaintiff must establish the School District failed to offer an appropriate program and the alternative private placement was appropriate).

Defendant does not object to these fees on grounds other than that they are not recoverable in this litigation.  Expert fees are not recoverable under the IDEA.  They are recoverable under Section 504 and/or the ADA.  See Elizabeth S., 2012 WL 2469547, at *5. Absent specific objections to the expert fees, and upon review of the exhibits supporting the expert fees appended to the Motion for Fees, the court will allow their reimbursement in the full amounts requested.

ii.      Copying Costs and Filing Fee

Defendant does not object to payment of the federal court filing fee of $400. Defendant does object to paying $528.29 (Motion for Fees Ex. Z) for copying exhibits, arguing that this charge should be disallowed as general law firm overhead, which is included in the hourly rate of the attorneys.

The court rejects defendant's objection to paying the copying charges because they are reimbursable under 28 U.S.C. § 1920(4) and the IDEA.  See In re Rite Aid Corp. Securities Litig., 146 F.Supp. 2d 706, 736 (E.D. Pa. 2001) ("Out-of-pocket expenses for . . . telecopier [expenses] are compensable.") (citing Missouri v. Jackson, 491 U.S. 274, 284 (1989)). See also E.C., 91 F.Supp. 3d at 616 (reimbursement of copy costs are authorized by 28 U.S.C. § 1920).  Plaintiff submitted sufficient documentation itemizing the costs requested at Exhibit Z of the Motion for Fees.  Id. at 616-17 (party seeking reimbursement of copying fees must submit documentation itemizing the costs requested).  The court awards reimbursement of the copying costs and filing fee in the aggregate amount of $928.29.

27

Plaintiffs' Motion for Fees is **GRANTED IN PART** consistent with this court's

Memorandum.  This court awards the following fees:

| Attorney | Reasonable Hourly Rate | Total Hours Requested | Adjustments (Hours) | Hours Reasonably Expended | Total Fees Awarded |
|---|---|---|---|---|---|
| David Berney | $385.00 | 84.1 | (13.1) | 71 | $27,335.00 |
| Vanita Kalra | $292.00 | 36.3 | (10.0) | 26.3 | $7,679.60 |
| Jennifer Sang | $248.00 | 322.1 | 1.6 | 323.7 | $80,277.60 |
| Kevin Gole-mbiewski | $200.00 | 16.4 | 0 | 16.4 | $3,280.00 |

The court also awards the following costs:

| Type of Cost | Total Costs Requested | Adjustments | Total Costs Awarded |
|---|---|---|---|
| Expert Fee Dr. Hurewitz | $4,725.00 | 0 | $4,725.00 |
| Expert Fee Dr. Mitchell | $1,897.50 | 0 | $1,897.50 |
| Expert Fee Ms. Clapper | $1,791.38 | 0 | $1,791.38 |
| Expert Fee Ms. Tannenbaum | $981.25 | 0 | $981.25 |
| Court Filing Fee | $400.00 | 0 | $400.00 |
| Copying Costs | $528.29 | 0 | $528.29 |

| | |
|---|---|
| Total Attorneys' Fees | $118,572.20 |
| Total Costs | $10,323.42 |
| Total Attorneys' Fees and Costs | $128,895.62 |

28

An appropriate Order follows.

BY THE COURT:


/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.M. and E.M., individually and on behalf of S.M. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : | NO.  14-6061 |

**O R D E R**

AND NOW, this 3rd day of November, 2015, for the reasons set forth on the accompanying Memorandum, it is hereby

**ORDERED**

1.      Plaintiffs' Motion for Judgment on the Administrative Record on Counts I and II of Plaintiffs' Complaint (Doc. No. 16) is **GRANTED**.  Judgment is entered in plaintiffs' favor and against defendant on Counts I and II of the Complaint.

2.      Cross-Motion of Defendant The School District of Philadelphia for Summary Judgment (Doc. No. 20) is **DENIED**.

3.      Plaintiffs' Motion for Attorney Fees and Costs (Doc. No. 17) is **GRANTED IN PART**.  Plaintiffs are awarded a total of $118,572.20 in attorneys' fees and $10,323.42 in costs, which shall be paid within thirty (30) days from the entry of this Order.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge